**UNITED STATES DISTRICT COURT**
**FOR NORTHERN DISTRICT OF GEORGIA**
**ATLANTA GEORGIA**

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No.: 03-2633-ODE |
| RISK CAPITAL TRADING GROUP, INC, DERON BAUGH, TYRONE EDWARDS, STEPHEN MARGOL, RICK SIEGEL, RICHARD TILLMAN and JUAN VALENTIN | ) | |
| Defendants. | ) | |

**CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF (REDACTED) AGAINST RISK CAPITAL TRADING GROUP, INC., DERON BAUGH, TY EDWARDS, STEPHEN MARGOL AND JUAN VALENTIN**

## I. BACKGROUND

1. On September 3, 2003, the Commission filed its Complaint in the above-captioned action against Defendants Risk Capital Trading Group, Inc. ("Risk Capital"), Deron Baugh ("Baugh"), Ty Edwards ("Edwards"), Stephen Margol ("Margol"), Rick Siegel ("Siegel"), Richard Tillman ("Tillman") and Juan Valentin ("Valentin") (collectively "Defendants"), seeking injunctive and other

equitable relief for violations of the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. §§ 1 *et seq.*, and Commission Regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq*.

2. On that same day, pursuant to the Commission's filing, the Court issued a Statutory Restraining Order freezing Risk Capital's assets and preserving its books and records.

3. On October 7, 2003, the Court also entered a Consent Order of Preliminary Injunction enjoining all Defendants from, among other things, further violating the Act.

## II. CONSENT AND AGREEMENT

1. To effect settlement of the matters alleged in the Complaint in this action without a trial on the merits, any further judicial proceedings or presentation of any evidence, Defendants Risk Capital, Baugh, Edwards, Margol and Valentin (collectively "Settling Defendants"):

a. Consent to the entry of this Consent Order of Permanent Injunction and Other Equitable Relief (the "Consent Order");

b. Affirm that they have read and agreed to this Consent Order voluntarily, and that no threat or promise has been made by the Commission or any member, officer, agent or representative thereof,

or by any other person, to induce consent to this Consent Order, other than as set forth specifically herein;

c. Acknowledge service of the Summons and Complaint;

d. Admit that this Court has jurisdiction over them and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

e. Admit that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

f. Waive:

    a. All claims which may be available under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 and 28 U.S.C. § 2412, relating to, or arising from, this action and any right under EAJA to seek costs, fees and other expenses relating to, or arising from this action;

    b. Any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any relief; and

    c. Any rights of appeal from this Consent Order;

g. Consent to the continued jurisdiction of this Court for the purpose of enforcing the terms and conditions of this Consent Order, to assure

compliance with the Consent Order, and for any other purposes relevant to this case, even if Settling Defendants now or in the future reside outside the jurisdiction; and

h. Agree that neither Settling Defendants nor any of their agents, employees, or representatives under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or findings or conclusions in the Consent Order or creating, or tending to create, the impression that the Complaint or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect Settling Defendants' (a) testimonial obligations; or (b) right to take legal positions in other proceedings to which the Commission is not a party. Settling Defendants shall take all necessary steps to ensure that all of their agents, employees, or representatives under their authority or control understand and comply with this agreement.

2. By consenting to the entry of this Consent Order, Settling Defendants neither admit nor deny the allegations of the Complaint or the Findings of Fact and Conclusions of Law contained in this Consent Order, except as to jurisdiction and venue, which they admit. However, Settling Defendants agree, and the parties to

this Consent Order intend, that the allegations of the Complaint and the Findings of Fact made by this Court shall be taken as true and correct and given preclusive effect, without further proof, in any proceeding in bankruptcy or any proceeding to enforce the terms of this Consent Order. Settling Defendants shall provide immediate notice to this Court and the Commission via certified mail of any bankruptcy proceeding filed by, on behalf of, or against them, individually or collectively, and shall provide immediate notice of any change of address, phone number, or contact information.

## III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore, without presentation of any evidence, directs the entry of findings of fact, conclusions of law, and a permanent injunction and ancillary equitable relief pursuant to § 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein. This Consent Order shall not bind any party who is not a signatory hereto.

## FINDINGS OF FACT

2. **The Commodity Exchange Act**, 7 U.S.C. § 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. § 1.1 *et seq.*, establish a comprehensive system for regulating the purchase and sale of commodity futures

contracts and options on commodity futures contracts ("options"). One of the primary purposes of the Act and Regulations is consumer protection.

**A. Parties to the Settlement**

3. **Risk Capital Trading Group, Inc.** is a Georgia corporation with its principal place of business at 3350 Riverwood Parkway, Suite 1560, Atlanta, Georgia 30339 and a branch office located at 19495 Biscayne Boulevard, Suite 607, Aventura, Florida 33180. Risk Capital has been registered with the Commission as an Introducing Broker ("IB") continuously since January 24, 2001, and is currently registered as an IB and a Notice Broker Dealer. Under the Act, an IB is "any person … engaged in soliciting or in accepting orders for the purchase or sale of any commodity for future delivery on or subject to the rules of any contract market … who does not accept any money, securities, or property." Section 1a(23) of the Act, 7 U.S.C. § 1a(23). The term "person" is defined under the Act to include corporations. See Section 1a(28) of the Act, 7 U.S.C. § 1a(28). Risk Capital's primary business was to solicit customers to purchase options through Broadstreet Financial Corporation ("Broadstreet"), a Futures Commission Merchant ("FCM"), and later through National Commodities Corporation, Inc. ("NCCI"), also an FCM. Risk Capital employed Associated Persons ("APs" or "brokers") to conduct its business. An AP is any natural person associated with an

FCM or IB, who (i) solicits or accepts customers' or options customers' orders; or (ii) supervises any person or persons so engaged. See Regulation 1.3(aa)(1) & (2), 17 C.F.R. § 1.3(aa)(1) & (2).

4. **Deron Baugh** is an individual residing at 12677 NW 17th Place, Coral Springs, Florida 33071. Baugh was registered with the Commission as an AP of Risk Capital from June 6, 2002 to April 9, 2003.

5. **Ty Edwards** is an individual residing at 1265 Upchurch Road, McDonough, Georgia 30252. Edwards was a principal and registered with the Commission as an AP of Risk Capital from January 24, 2001 to June 5, 2002.

6. **Stephen Margol** is an individual residing at 5641 Oakview Terrace, Ft. Lauderdale, Florida 33312. Margol was registered with the Commission as an AP of Risk Capital from July 29, 2002 to August 30, 2003, with the exception of a brief period between August and September 2002.

7. **Juan Valentin** is an individual residing at 2695 Barcelona Drive, Marietta, Georgia 30064. Valentin was registered with the Commission as an AP of Risk Capital from January 25, 2001 to April 9, 2003, with the exception of a period between June and November 2001.

**B. Settling Defendants' Fraudulent Sales Solicitations**

8. From at least January 24, 2001 through at least September 2003 ("the relevant period"), Risk Capital, through its APs, including but not limited to Baugh, Edwards, Margol and Valentin, solicited members of the general public to open accounts to trade options.

9. During the relevant period, Risk Capital opened, by means of telephone solicitations, over 1,200 new accounts.

10. Ninety-eight percent (98%) of Risk Capital's customers lost substantially all of their investments, totaling over $16 million in losses.

11. Risk Capital APs, including Baugh, Edwards, Margol and Valentin, induced customers to invest with Risk Capital by making false and misleading material representations and omissions during sales solicitation telephone calls to customers and potential customers.

12. In telephone calls, Settling Defendants and other Risk Capital APs engaged in fraudulent sales solicitations by knowingly misrepresenting and failing to disclose material facts concerning, among other things: (i) the likelihood that customers would profit from trading options; (ii) the risk involved in trading options; and (iii) the poor performance record of Risk Capital customers trading options.

**i.) Settling Defendants' Misrepresentations Exaggerating the Likelihood of Profit**

**(a). Settling Defendants and other Risk Capital APs Misrepresented the Return on Options**

13. From their very first interaction with potential customers, Settling Defendants other Risk Capital APs systematically misrepresented the profit potential involved with trading options and the likelihood that this profit would be achieved.

14. Settling Defendants and other Risk Capital APs repeatedly informed their customers that they would make substantial amounts of money in a very short time by trading options through Risk Capital.

15. Customers of Risk Capital relied upon these statements in making their decision to invest with Risk Capital.

16. These statements were false because Risk Capital customers were not making quick, large returns on their investments; rather, they sustained severe losses.

17. Settling Defendants knowingly or recklessly made these false and misleading statements.

**(b). Settling Defendants and other Risk Capital APs Misrepresented the Likelihood of Profit Based Upon Well-Known Public Information**

18. To entice customers to trade with Risk Capital, Settling Defendants and other Risk Capital APs habitually referred to well-known public information, such as seasonal trends and world events, as the primary, if not the sole, basis to trade options.

19. Specifically, Settling Defendants represented that customers would likely reap substantial profits by trading upon publicly known information, such as the war in Iraq and the rise in heating oil prices in the winter.

20. Commodity markets are efficient markets, and efficient markets quickly factor publicly known information into the price of options contracts. Because of this, one cannot earn substantial profits trading options based on such publicly known information.

21. Settling Defendants failed to disclose these facts to their customers; instead, they misled customers into believing that such profits were probable.

22. Customers of Risk Capital relied upon these statements in making their decision to invest with Risk Capital.

23. Settling Defendants knowingly or recklessly made these false and misleading statements and omissions.

### (c). Settling Defendants and other Risk Capital APs Used Misleading Leverage Examples

24. Settling Defendants and other Risk Capital APs also enticed customers to invest using misleading leverage examples that emphasized large profit potential with only a small investment amount.

25. Settling Defendants and other Risk Capital APs represented to customers that even a small shift in the price of a commodity option would yield large profits.

26. Settling Defendants failed to inform customers that an increase in the price of the underlying futures contract typically does not produce a one-to-one increase in the value of an option on that futures contract and that since Settling Defendants bought out-of-the-money option contracts for their customers, no move, big or small, in the underlying futures contract would necessarily have any effect on the value of the option contract.

27. These examples also failed to account for the high commissions charged by Risk Capital that substantially impacted the potential for any profit, let alone a large one.

28. Customers of Risk Capital relied upon these statements in making their decision to invest with Risk Capital.

29. Settling Defendants knowingly or recklessly made these false and misleading statements and omissions.

**(d). Settling Defendants and other Risk Capital APs Improperly Connected Profits to Immediate Investment**

30. Settling Defendants and other Risk Capital APs commonly told customers that they needed to invest immediately or risk losing the opportunity to make a substantial profit.

31. By using this high-pressure sales tactic, they gave the impression that profits were certain or guaranteed, the only variable being the amount of profit to be made.

32. Settling Defendants routinely urged customers that they should do whatever they could to come up with money to invest, and that they needed to act fast because any delay in trading would cause them to lose out on profits.

33. Customers of Risk Capital relied upon these statements in making their decision to invest with Risk Capital.

34. Settling Defendants knowingly or recklessly made these false and misleading statements.

**ii.) Settling Defendants' Misrepresentations and Omissions Minimizing the Risk of Loss**

35. During the course of their telephone sales solicitations, Settling Defendants and other Risk Capital APs routinely failed to disclose adequately the risk of loss inherent in trading options.

36. Among other things, Settling Defendants and other Risk Capital APs fraudulently led customers and potential customers to believe that risk of loss was, or could be, limited, and any disclosures of risk were vitiated by the unbalanced, high-pressure sales presentations which falsely conveyed that trading options with Risk Capital was highly profitable and virtually risk free.

37. Customers relied upon these statements in making their decision to invest with Risk Capital.

38. Settling Defendants knowingly or recklessly made these misrepresentations and failed to adequately disclose the risk of loss associated with trading commodity option contracts.

**iii.) Settling Defendants' Misrepresentations and Omissions Regarding Risk Capital's Losing Performance Record**

39. When urging customers to invest immediately with promises of large profits with limited or no risk, Settling Defendants and other Risk Capital APs

extolled their performance record and bragged of profits made by their previous customers.

40. Customers relied upon these statements in making their decision to invest with Risk Capital.

41. However, Settling Defendants never disclosed that an overwhelming majority of Risk Capital customers lost most, if not all, of their investment.

42. In fact, between January 24, 2001 and September 2003, approximately 98% of the over 1,200 accounts opened by Risk Capital lost money and Risk Capital customers realized combined losses of approximately $16 million.

43. At the same time, Risk Capital generated approximately $8,771,235 in commissions and fees from customers.

44. Settling Defendants knowingly or recklessly made these misrepresentations and omissions regarding their track records, and failed to disclose to their customers and potential customers the fact that most of Risk Capital customers sustained severe losses trading through their firm.

## **CONCLUSIONS OF LAW**

45. This Court has jurisdiction over the subject matter of this action and all parties hereto pursuant to Section 6c of the Act, 7 U.S.C. §13a-1, which authorizes the Commission to seek injunctive relief against any person whenever it

shall appear that such person has engaged, is engaging or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

46. Venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. §13a-1, in that the Settling Defendants are found in, inhabit, or transact business in this district, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this district, among other places.

47. This Court has personal jurisdiction over the Settling Defendants, who acknowledge service of the Complaint and consent to the Court's jurisdiction over them.

48. The Commission and the Settling Defendants have agreed to this Court's retention of continuing jurisdiction over each of them for the purpose of enforcing the terms of this Consent Order.

49. By the conduct described in the Findings of Fact in Section III above, each of the Settling Defendants violated Section 4c(b) of the Act, 7 USC. § 6c(b), and Section 33.10(a) and (c) of the Regulations, 17 C.F.R. § 33.10(a) and (c).

50. The fraud of Baugh, Edwards, Margol and Valentin, as described above, occurred within the scope of their employment with Risk Capital; thus, Risk

Capital is liable for their unlawful conduct pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B).

## IV. ORDER FOR PERMANENT INJUNCTION

With the consent of the parties, IT IS NOW HEREBY ORDERED THAT:

1. Settling Defendants are permanently restrained, enjoined and prohibited from directly or indirectly engaging in any conduct that violates Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 33.10(a) and (c), 17 C.F.R. § 33.10(a) and (c), and from engaging in any commodity-related activity including making sales solicitations to customers that misrepresented or omitted:

a. the profit potential in commodities trading;

b. the fact that the market factors into the price of commodities well-known public information such as seasonal trends and well-known market events;

c. the actual track record of the broker or firm;

d. the risk involved in commodity trading; and

e. any material fact necessary to make other facts disclosed not misleading.

2. Settling Defendants are permanently restrained, enjoined and prohibited from directly or indirectly:

a. Trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29);

b. Soliciting, receiving, or accepting any funds in connection with the purchase or sale of any futures contract or option on a futures contract;

c. Engaging in, controlling or directing the trading for any commodity futures, security futures, options on futures, foreign currency futures, options on foreign currency futures or options on foreign currency accounts for or on behalf of any other person or entity, whether by power of attorney or otherwise; and

d. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9), or acting as a principal, agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14 (a)(9), 17 C.F.R. § 4.14(a)(9). This includes, but is not limited to, soliciting, accepting or receiving any funds, revenue or

other property from any person, giving commodity trading advice for compensation, except as provided for in Regulation 4.14 (a)(9), 17 C.F.R. § 4.14(a)(9), or soliciting prospective customers, related to the purchase or sale of any commodity futures, security futures, options on futures, foreign currency futures, options on foreign currency futures or options on foreign currency.

3. The injunctive provisions of this Consent Order shall be binding on Settling Defendants, upon any person insofar as he or she is acting in the capacity of officer, agent, servant, employee or attorney of Settling Defendants, and upon any person who receives actual notice of this Consent Order by personal service or otherwise insofar as he or she is acting in active concert or participation with Settling Defendants.

## V. ORDER FOR RESTITUTION, CIVIL MONETARY PENALTY, AND OTHER ANCILLARY RELIEF

1. With the consent of the parties, IT IS NOW HEREBY ORDERED that Settling Defendants shall comply fully with the following terms, conditions and obligations relating to the payment of restitution and the payment of a civil monetary penalty.

**A. RESTITUTION**

2. Settling Defendants are each liable for restitution to customers in the following amounts, plus pre-judgment interest and post-judgment interest:

a. Risk Capital: $12,833,470

b. Deron Baugh: $125,000

c. Ty Edwards: $250,000

d. Stephen Margol: $44,000

e. Juan Valentin: $15,000

3. Settling Defendants' restitution obligations, plus pre-judgment interest and post-judgment interest, shall include all monies currently frozen and held at Wachovia Bank, N.A., and under the control of the Monitor as discussed below. All restitution payments are immediately due and owing. Any amount paid to any customer of Risk Capital shall not limit the ability of any customer from independently proving in a separate action that a greater amount is owed from Settling Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer that exist under federal, state, or common law to assert a claim for recovery against Settling

Defendants subject to any offset or credit that Settling Defendants may be entitled to claim under the law governing that customer's claim.

4. Interest: Pre-judgment interest from September 2003 to the date of this Consent Order shall be determined by the Internal Revenue Service by using the underpayment rate established quarterly by the Internal Revenue Service pursuant to 26 U.S.C. § 662(a)(2). Post-judgment interest shall accrue beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of this Consent Order pursuant to 28 U.S.C. § 1961.

5. Appointment of Monitor: To effect payment by Settling Defendants and distribution of restitution to defrauded customers, the Court appoints Daniel Driscoll of the National Futures Association as Monitor ("Monitor"). The Monitor shall collect restitution payments from Settling Defendants, compute pro rata allocations to injured customers identified in Exhibit A to this Consent Order, and make distributions as set forth below. As the Monitor is not being specially compensated for these services, and these services are outside the normal duties of the Monitor, he shall not be liable for any action or inaction arising from his appointment as Monitor, other than actions involving fraud. Restitution payments under this Consent Order shall be made to the National Futures Association

("NFA") by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, made payable to the Risk Capital Settlement Fund and sent to Daniel Driscoll, Monitor, National Futures Association, 200 W. Madison St., #1600, Chicago, IL 60606-3447 under a cover letter that identifies the paying defendants and the name and docket number of the proceeding. Settling Defendants shall simultaneously transmit a copy of the cover letter and the form of payment to Gregory Mocek, Director, Division of Enforcement, Commodity Futures Trading Commission, at the following address: Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581. The NFA, through the Monitor, shall oversee Settling Defendants' restitution obligation and shall make periodic distributions of funds to customers as appropriate. Based upon the amount of funds available, the NFA may defer distribution until such time as it deems appropriate. Restitution payments shall be made in an equitable fashion as determined by the NFA to the persons identified on Exhibit A. Subsequent to the entry of this Consent Order, each Settling Defendant shall provide the Commission and the Monitor with immediate notice of any filing or compromise and settlement of any private or governmental actions relating to the subject matter of this Consent Order in the manner required by Part VI of this Consent Order.

## B. CIVIL MONETARY PENALTY

6. The following civil monetary penalties are assessed against the Settling Defendants, and are immediately due and owing, plus post-judgment interest pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1:

a. Risk Capital: $8,771,235

b. Deron Baugh: $225,000

c. Ty Edwards: $200,000

d. Stephen Margol: $86,000

e. Juan Valentin: $60,000

7. All payments by Settling Defendants shall be applied to their respective restitution obligations under this Consent Order until all respective restitution obligations have been paid in full. Upon full payment of their respective restitution obligations, all payments by Settling Defendants will be applied to their respective civil monetary penalty obligations under this Consent Order.

8. Post-judgment interest shall accrue beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of this Consent Order pursuant to 28 U.S.C. § 1961.

9. Settling Defendants shall pay this penalty by making electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order made payable to the Commodity Futures Trading Commission and sent to the attention of the Office of Cooperative Enforcement, Division of Enforcement, CFTC, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581. Settling Defendants shall accompany payment of the penalty with a cover letter that identifies the paying defendant, and the name and docket number of this proceeding. Settling Defendants shall simultaneously transmit a copy of the cover letter and the form of payment to the Monitor and to Director, Division of Enforcement, CFTC, Three Lafayette Centre, 1155 21st N.W., Washington, D.C. 20581.

## VI. MISCELLANEOUS PROVISIONS

1. Notification of Financial Institutions. The parties stipulate that upon the issuance of this Consent Order, the Commission shall promptly provide each of the financial institutions identified in this paragraph with a copy of this Consent Order. Within thirty (30) days of receiving this Consent Order, each financial institution listed below shall liquidate and release any and all funds held by Risk Capital, and convey the funds, by wire transfer, to an account designated by the Monitor, less any bank wire or administrative fees. The transfer of such funds held

by Risk Capital represents an offset to the restitution amounts owed by Risk Capital pursuant to this Consent Order. At no time during the release, liquidation or wire of the funds shall Settling Defendants be given access to, or be provided with, any funds from these accounts. Risk Capital and the financial institutions listed below shall cooperate fully and expeditiously with the Commission and Restitution Monitor in the liquidation and transfer of funds. The accounts to be liquidated, released, and transferred are:

Risk Capital Trading Group, Inc. Account # *************, Wachovia Bank, N.A.

Risk Capital Trading Group, Inc., Account # **********, Wachovia Bank, N.A.

2. Notices. All notices required by this Consent Order shall be sent by certified mail, return receipt requested, as follows:

a. Notice to Plaintiff Commission:
Division of Enforcement
Commodity Futures Trading Commission
1155 21st Street, NW
Washington, DC 20581

b. Notice to the Restitution Monitor:
Daniel Driscoll
National Futures Association
200 West Madison Street
Chicago, IL 60606

c. Notice to Defendants Risk Capital, Baugh, Edwards, Margol and Valentin:
c/o Homer & Bonner, P.A.
1441 Brickell Avenue
12th Floor
Miami, FL 33131

3. Equitable Relief: The equitable relief provisions of this Consent Order shall be binding upon Settling Defendants and any person who is acting in the capacity of officer, agent, employee, servant, or attorney of Settling Defendants, and any person acting in active concert or participation with Settling Defendants and those equitable relief provisions that relate to restitution shall be binding on any financial institutions listed above or holding frozen funds or assets of the Settling Defendants, who receives actual notice of this Consent Order by personal service or otherwise.

4. Counterparts. This Consent Order may be executed by the parties in counterparts and by facsimile.

5. Entire Agreement, Amendments and Severability. This Consent Order incorporates all of the terms and conditions of the settlement among the parties. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (1) reduced to writing, (2) signed by all parties, and (3) approved by order of the Court.

6. Invalidation: If any provision of this Consent Order, or if the application of any provisions or circumstances is held invalid, the remainder of the Consent Order and the application of the provisions to any other person or circumstance shall not be affected by the holding.

7. Waiver: The failure of any party hereto at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

8. Acknowledgements: Upon being served with copies of this Consent Order after entry by the Court, Settling Defendants shall sign acknowledgments of such service and serve such acknowledgments on the Court and the Commission within seven (7) calendar days. Settling Defendants further acknowledge and understand that this Consent Order must be accepted and ratified by the Commission before it becomes final. However, Settling Defendants understand and agree that by their signatures they are bound by the terms and conditions of

this Consent Order, unless the Commission refuses to accept and ratify the Consent Order.

9. Continuing Jurisdiction of this Court. Upon entry of this Consent Order, this case shall be dismissed with prejudice as to all Settling Defendants, and the Court shall retain jurisdiction of this cause only to assure compliance with this Consent Order.

10. Authority. Salvatore Martorano hereby warrants that he is the owner of Risk Capital, that this Consent Order has been duly authorized by Risk Capital, and that he has been duly empowered to sign and submit it on behalf of Risk Capital.

**WHEREFORE**, there being no just reason for delay, the Clerk of the Court is hereby directed to enter this Consent Order of Permanent Injunction and Other Equitable Relief Against Defendants Risk Capital Trading Group, Inc., Deron Baugh, Ty Edwards, Stephen Margol and Juan Valentin.